PER CURIAM.
This disciplinary matter against Remus C. E. Allen, a member of The Florida Bar, is before us on complaints of The Florida Bar and report of the referee. No petition for review has been filed.
After hearing and consideration of the pleadings and evidence, the referee found:
“1. Following the death of her grandmother in May 1975, Edna Randolph Washington and Carolyn Washington received notice of an estate proceeding from an attorney.

“2. With her sister, Alie Joyce Washington and mother, the Washingtons, hired the respondent to represent them in the pending estate proceedings. .
“3. The sisters had been left several acres of land in Wakulla County, Florida by their grandmother.
“4. Respondent was also given directions and authority to do what was necessary to sell the land for the sisters who signed whatever papers were necessary. .
“5. There was no communication between respondent and his clients for over a year despite several attempts to reach him including telephone calls and unannounced office visits. .
“6. In August 1976, the clients finally located respondent at his apartment and requested he return their papers which he promised to do. .
“7. The Washington sisters and their mother understand they could not sell the land without the papers they had signed and given respondent. .
“8. September 29, 1976, Respondent Allen sent Carolyn Washington a letter forwarding a copy of a petition in the estate case, a signed motion to withdraw in the same case and a copy of a letter addressed to Buddy Commander of St. Marks Realty, which he stated was handling the property. . Respondent’s letter stated he could find no other papers and denied he had been retained to handle the property sale.
“9. No other papers were never [sic] returned to the clients by either respondent or the realtor and the land remained unsold.

“10. The Washingtons had no further contact with respondent whose fee for his services was to come from the proceeds of the land sale. .

“1. Valerie Frazier retained respondent to assist her in handling problems arising out of an automobile accident in July 1975. After pleading guilty in court on the traffic case, Mrs. Frazier went to respondent to have him work out a settlement with the injured parties regarding their medical bill so that she could avoid having her driver’s license suspended. .
*164 “2. Two people on a motorcycle were injured and Mr. [sic] Frazier did not have the requisite automobile insurance.
“3. Respondent was to work out a plan where she could pay the injured parties on an installment basis and secure a release so she could regain her driver’s license which was suspended in October 1975. .
“4. Respondent advised her on several occasions he was working on the case. He requested and received $200 from Mr. Frazier purported as a down payment in January 1976. . . . The money was borrowed from Avco Financing and taken to respondent by Willie Frazier, then Mrs. Frazier’s husband. .
“5. Thereafter Ms. Frazier was unable to contact respondent regarding her case except for an encounter at the Tallahassee Mall where he promised to return her file. . Her husband’s efforts to secure their file, including one demand in June 1976, by certified mail which respondent received were equally futile .
“6. No action has been taken by respondent on Mrs. Frazier’s case since January 1976 and he has failed to return any of her file. “7. Her driver’s licence [sic] remained suspended as of the day of this hearing although she had been recently advised that due to lapse of time she could get it reinstated upon proving she had obtained the necessary insurance coverage. .

“1. In February 1973, Mrs. Pollie T. Elmore retained respondent and paid him $250 to secure title for her to some land in Wakulla County, Florida, left to her by her mother.
“2. She had to borrow the money . . . which he promised to return if he could get title and a deed to the property for N” Mrs. Elmore understood $250 was the toual cost of her case. . . . She also gave him an undated list of heirs or people involved necessary to handle the matter. .
“3. Over the next three years Mrs. Elmore found it difficult to contact respondent about her case and in early 1976, he closed his office without notifying her. .
“4. When she was able to locate the respondent he would promise he was working on her ease and would get her deed soon. .
“5. Notwithstanding his promises, respondent did not complete the case and her last contact with him was in February 1976.

“6. After Mrs. Elmore contacted The Florida Bar in July 1976, respondent returned some papers to her and advised her he was keeping the entire $250 to pay the costs he had incurred despite his prior promises. His August 1, 1976, letter to her stated he had made five trips to Wakulla County and one to South Florida. ... He also stated in the letter she had accompanied him twice to Wakulla County which Mrs. Elmore denied, stating it was only once.

“7. The letter was the only accounting ever furnished by respondent to Mrs. Elmore.

“1. Although no witness appeared on behalf of The Florida Bar, counsel pointed out that respondent failed to file any response to'the request for admissions filed on May 2,1977. Under Fla.R.Civ.P. 1.370, which rules are applicable in these proceedings pursuant to Fla.Bar Integr.Rule, art. XI, Rule 11.06(3), failure to respond timely deems the matters sought to be admitted conclusively established.
“2. I find the foregoing is applicable to this count and supersedes the general denial in the answer filed by respondent on May 21, 1977. Such answer was addressed to the complaint only and a response is not mandatory under Fla.Bar Integr.Rule, art. XI, Rule 11.06(5)(b). However a response is required to a properly filed request for admissions if the party wishes to avoid having requested information deemed conclusively established.
“3. Respondent was retained in March 1975 by Mr. J. T. Gregory and paid $125 to handle a dissolution of marriage and a partial fee for a traffic case. Mr. Gregory also *165 loaned respondent $100 which has not been repaid.
“4. Mr. Gregory subsequently has been unable to locate the respondent to complete the dissolution of marriage case or to pay the balance he owes on the traffic case.
“5. Mr. Gregory has also been unable to recover his income tax files from the respondent which he needs to respond to an IRS inquiry regarding his 1974 return. .

“1. Respondent represented Mr. Robert Love in various matters in 1975 and 1976. Mr. Love gave him $1,000 in trust on September 30, 1975, to be paid to the Florida Public Service Commission to cover a $500 application fee and $500 certification fee for a" commercial vehicle certificate. .
“2. Respondent never applied for the certificate despite advising Mr. Love on several occasions over the next several months that he was working on it and would get him a duplicate or temporary certificate to enable him to operate his vehicle. .
“3. During those months Mr. Love’s vehicle was inoperative commercially for lack of a certificate. .
“4. Mr. Love testified that many occasions he went from Quincy to Tallahassee attempting to locate respondent well into 1976 without apparent success.
“5. When he discovered respondent had never filed an application with the Public Service Commission, Mr. Love confronted him. He was advised by respondent that he was in financial trouble, did not have have the money and had spent it for his own personal use. He did promise to repay it.

“6. Only after Mr. Love filed his complaint with The Florida Bar in December 1976, and subsequent to the finding of probable cause by the Second Judicial Circuit Grievance Committee, respondent finally repaid Mr. Love the $1,000 involved in this count in May 1977. .

“1. In [sic] July 20, 1976, Mr. Love gave respondent at his request $1,500 in cash to represent him in a personal injury action in Georgia arising out of an accident involving 0ne his trucks. Seven hundred dollars was cover any expenses and $800 was for jjjs fee
“2. The primary defense in the case was being handled by Georgia counsel for Mr. Love’s insurance carrier as required by the contract. Respondent was assisting. .
“3. Respondent had first met with the Georgia counsel and Mr. Love in Tallahassee in November 1975. He later accompanied Mr. Love to a deposition taken in Moultrie by the Georgia lawyer, Mr. Young.

“4. On a visit with his clients to Mr. Young’s Valdosta office on July 5, 1976, respondent discussed in private the manner of expenses with Mr. Young who specifically asvised [sic] him the insurance policy required they defend their client and pay all expenses incident to the litigation. .
“5. Notwithstanding this conversation, respondent requested and received $700 from Mr. Love for expenses relative to this case referred to in paragraph one on July 29, 1976.
“6. Subsequent to this meeting both Mr. Young and Mr. Love had very little contact with Mr. Allen. .
“7. Mr. Love later was able to contact respondent and requested full return of the $1,500 from the accident case due to respondent’s lack of action. .
“8. Respondent then sent Mr. Love an October 4, 1976, letter covering the cases in both counts of this complaint and advised him an additional $1,000 was owed, which was not true. .
“9. After Mr. Love filed his complaint with The Florida Bar, Respondent gave his new attorney a check for $2,500 on the day of the greivance [sic] committee hearing in 1977 which found probable cause, covering both cases, which check was returned for insufficient funds. . . . Mr. Love then *166 filed a complaint with the state attorney. Ultimately the money was repaid by respondent to Mr. Love. . . . ”
The referee recommends that respondent be found guilty of violating Disciplinary Rules 1-102(A)(4), 2-106(A), 2-106(B), 6-101(A)(3), 7-101(A)(2), 7-101(A)(3), 9-102(A), 9-102(B)(4), Code of Professional Responsibility, and Rules 11.02(3)(a) and 11.02(4) of the Integration Rule of The Florida Bar.
In evaluating respondent’s past disciplinary record, the referee considered Florida Bar v. Allen, 355 So.2d 778 (Fla.1978), wherein this Court suspended Allen for one year and thereafter until he proves rehabilitation. The referee presently recommends that respondent be disbarred from the practice of law in Florida.
We agree with the findings and recommendations of the referee.
Accordingly, respondent, Remus C. E. Allen, is hereby disbarred, effective immediately. Execution is hereby directed to issue for the costs of these proceedings against respondent in the amount of $638.80.
It is so ordered.
ENGLAND, C. J., and ADKINS, BOYD, OVERTON and ALDERMAN, JJ., concur.